Crawford, Governor, &c. *vs.* Word, Wofford and others.

No. 76.—GEORGE W. CRAWFORD, Governor, &c. for the use of JOHN R. STANFORD, plaintiff in error, *vs.* CHARLES B. WORD, principal, and WILLIAM B. WOFFORD, *et al.* sureties, defendants in error.

[1.] A rule absolute against the Sheriff, ordering him to pay over money, is neither an extinguishment of his official security, nor a bar to a suit against his sureties. It is but one of several remedies which the injured party may use successively, until he obtains satisfaction. In a suit on his bond, it is *conclusive* against the *principal*, but *presumptive* evidence only against the *sureties*; and they will be allowed to prove everything *ab origine*, which would have protected the principal from liability.

[2.] In a rule or action against the Sheriff, for neglecting or refusing to levy an execution on the property of the defendant, the measure of damages is the amount of the execution; and neither the officer himself nor his securities, when sued on the bond, will be permitted to give in evidence, to reduce the recovery, the insolvency of the defendant, and that there were outstanding liens against him, at the time the official default occurred, more than sufficient to cover the proceeds of the property, had it been brought to sale.

[3.] Interrogatories taken in one case, in order to be read in another, must not only be between the same parties, but relate also to the same subject matter; and then will be introduced, only from the necessity of the case, the witness being dead or beyond the jurisdiction of the Court.

Debt on Sheriff's bond, in Habersham Superior Court. Tried before Judge DOUGHERTY, April Term, 1849.

This was a suit on the bond of Charles B. Word, former Sheriff of Habersham County. The breach was, the failure to pay the amount of a *fi. fa.* in favor of John R. Stanford against Lewis Levy, upon an order absolute of the Inferior Court, commanding him so to do, he having failed to collect the same. Upon the trial, the rule absolute against the Sheriff, was in evidence before the Jury. Defendants then offered in evidence *fi. fas. vs.* Levy, to a large amount, unsatisfied, to show his insolvency; to which plaintiff objected, on the grounds—

1st. That the rule absolute against the Sheriff, was *conclusive* against him and his sureties.

2d. That there was no return of "*nulla bona*" on the *fi. fas.* at the time plaintiff's *fi. fa.* was in the Sheriff's hands, nor for two or three years afterwards.

3d. That plaintiff having no notice of their production in evi-

dence, defendants ought to prove that they have not been satisfied; or at least, that they had been continued in the Sheriff's office.

The Court overruled the objections, and plaintiff excepted.

The plaintiff offered the deposition of the defendant in *fi. fa.* Lewis Levy, to prove that he had sufficient property to pay his debts, at the time plaintiff's execution was in his hands.

These interrogatories were taken in another case, between the same parties, in which defendants had sued out an injunction of the present case against the plaintiff.

On objections by defendants, the Court ruled out the testimony, and plaintiff excepted.

The Court charged the Jury, that the rule absolute against the Sheriff, was only *prima facie* evidence against the sureties, and might be rebutted. To this charge plaintiff excepted; and on these several exceptions error has been assigned.

John R. Stanford, for plaintiff in error.

H. Cobb, Underwood, Peeples and Overby, for defendants in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

The Sheriff having failed to levy the execution of Stanford, against Levy, and a rule absolute having been granted against him, for the amount of the plaintiff's debt, in consequence of this neglect of duty, the question submitted to us is, whether or not it is allowable for the securities, in an action against them, on the bond, to show in mitigation of damages, that there were, at the time, outstanding *fi. fas.* against the defendant, of an older date than plaintiff's, amounting to $3,000 and upwards; and as was demonstrated by the sale which was made of the property sometime afterwards, more than sufficient to cover the proceeds?

[1.] It is conceded that the rule absolute against the Sheriff, is presumptive evidence only, against the securities; and that they, when sought to be made chargeable *therefor,* may set up any defence which the Sheriff himself could, in answer to the original rule which was taken against him. Would the Sheriff, then, himself be permitted to plead this matter, by way of excuse for not

levying the execution ?    Some of the cases, I grant, would seem to maintain this doctrine.

*Gains vs. Downs, (Harper's L. R.* 72,) was an action on the case against the Sheriff.    The defendant had levied an execution of the plaintiff against one Kendrick, on property which he left in Kendrick's possession, who left the State with it, and failed to produce it on the day of sale.    It was shown in evidence, that there were in the office, executions against Kendrick, older than the plaintiff's, which would have taken the whole of the proceeds, if the property had been sold.    And the Court *held,* that the plaintiff had sustained no injury, and was not entitled to recover. But Mr. Justice *Nott,* in delivering the opinion of the Court, re- marked that the Sheriff's conduct could scarcely be said to amount to neglect, and that it was rather a legal responsibility which he had incurred, by the misconduct of an agent who had betrayed his confidence.    " There can be no question," says the learned Judge, " but that when a Sheriff takes property in exe- cution, he may place it in the hands of an agent, to keep, subject to his order ; and if he thinks proper, he may employ the party himself, for that purpose.    It affords him an opportunity of in- dulging towards an unfortunate debtor, the benevolent feelings of which those clothed with a little authority, are too often un- mindful.    It saves to the debtor the expense which he might oth- erwise incur ; it allows him the enjoyment of the property, until the time shall arrive when probably he will have none to enjoy ; and it may afford him the means of paying the debt, without such a sacrifice."

Thus, it will be perceived, that the decision is placed upon the grounds, both of humanity to the debtor, and upon the fact that the officer had been guilty of no intentional wrong.    On the con- trary, that he was attempting, in good faith, to do his duty, and was only prevented by an abuse of confidence, which he could not foresee, nor consequently, provide against.    So, in *Ware vs. Fowler,* (24 *Maine R.* 183,) it was held, that in an action against an officer, to recover damages occasioned by neglect of official duty, in omitting to serve and return an execution in favor of the plaintiff, the measure of damages was the amount of injury actu- ally sustained.    The facts were briefly these : The deputy Sher- iff arrested the debtor, who gave a poor debtor's bond, which was approved by two Justices, and the debtor released ; but nei-

ther the execution nor the bond was returned in the Clerk's office, as required by law. The Court suffered the officer to show, in mitigation of damages, that the obligors were insolvent and unable to pay the debt.

But here again it will be observed, that the Magistrates, and not the officers who made the arrest, were made the judges of the sufficiency of the bond; that duty the law had confided to others; and the Court remarked very properly, that the Sheriff was not responsible for the neglect or misconduct of the Justices. If the bond was worthless, the creditor would at most, under the circumstances, be entitled to nominal damages only, for the failure of the officer to return it.

Without assenting to all the principles embodied in these decisions, and other reported cases which might be adduced to the same purpose, I may be permitted to say, that they come short of the case at bar. Were it otherwise, however, and did the authorities support the defendant's view of the subject, i. e. that the gist of the action was the neglect of the Sheriff, in not levying the execution; and that while it is true that proof of the omission to levy, according to the command of the writ, makes out a perfect cause of action against the officer, nevertheless, the measure of damages will be more or less, according to the facts and circumstances of each particular case, varying from one cent to the whole amount of the execution; and that notwithstanding the neglect of the officer, testimony is admissible, to show the actual insolvency of the debtor; that although he had property in his possession, apparently sufficient to satisfy the *fi. fa.* yet there were other liens, to which the avails of the sale would have been applied; and that consequently, no injury has resulted to the plaintiff, from the officer's neglect to levy and sell : I repeat, had the adjudications in the Courts of our sister States gone to this extent, we should have felt constrained to have dissented from the doctrine.

[2.] We will proceed to lay down, succinctly, the law, as held by this Court.

It is the *sworn* duty of the Sheriff, faithfully to execute all precepts and processes which are directed to him. The law makes it his imperative duty, especially, to levy all executions which come to his hands, unless otherwise instructed; and he is not allowed to exercise any discretion concerning it. If he fails or neg-

lects to perform the duties which the law and his oath of office thus devolve upon him, and renders no satisfactory excuse, when called on, for the omission, he is amenable by action or rule, to the party aggrieved by his misconduct. And that where an execution is placed in his hands, and he makes no effort to collect it, and gives no good reason for not doing so, the presumption of law is, that he has collected the debt, and he will therefore be held liable for the amount. And it is not competent for him to show outstanding liens of an older date than the plaintiff's, which might have claimed the proceeds of the defendant's property, had it been brought to sale. The Sheriff is a mere ministerial officer, and the law has not constituted him a judge in such a case. He must use due diligence to find out what estate the debtor has, and make reasonable exertions to bring it to market. Nor will the failure to point out the effects by the plaintiff, excuse the officer. He is commanded, *de bonis et terris*, of the goods and chattels, lands and tenements, to raise the debt; and he must, at his peril, make an honest effort to execute the mandate of the Court. He has no right to speculate as to the course that may likely be pursued by the conflicting creditors. His duty is plain : to levy the precept on the property of the party. It often happens, that by pressing a junior lien, the defendant will pay the debt, rather than submit to be sold out. And this is one of the chances of being paid, of which the officer has no right, by his *laches*, to deprive the plaintiff. If it were settled that officers, having executions in their hands, are permitted to neglect or disregard their duty, and then to avoid responsibility, may give the poverty of the debtor in evidence, one main object of the law will be defeated; and that is, to force the debtor to apply all of his funds and effects, *secret*, as well as those which are apparent, to the payment of his debts. Besides, if the execution remain unsatisfied, after all the visible effects of the debtor are exhausted, other steps may be resorted to by the creditor, to coerce payment out of assets not subject to seizure and sale. And on this account, he may well complain of the neglect or refusal of the officer to levy his execution.

And we do not see that any well-founded complaint can be made against the rule, which holds an officer rigidly responsible *for his wilful dereliction of duty*. The law does not exact impossibilities. If he meets with obstructions, he has nothing to do

but to report them to the Court, and his return, unless successfully controverted, will shield him from liability. Thus performing his contract with the public, he is more invulnerable than Achilles himself—the most covetous creditor cannot even bruise his heel. At the same time, he must be made to understand, that he is not at liberty to suspend the law at his pleasure, or violate it with impunity. And that if he *wilfully* refuses to levy an execution on the property of the defendant, or to arrest his body when required to do so, he is guilty of a gross and unpardonable breach of the high public trust which his fellow-citizens have confided to his hands; for which he ought, justly, to be made liable, by way of punishment, for the amount of the debt in his hands. And we believe that it would be dangerous in the extreme to prescribe a rule more lax than this, where, as in the present case, no extenuating circumstances were offered by the Sheriff.

We must not lose sight of the creditor's rights, in our sympathy for the defaulting officer, nor decrease his vigilance, by lessening his responsibility. Remove from Sheriffs the salutary checks and restraints and stimulants, established and imposed by law—let their liability depend, in every instance of official misconduct, whether voluntary or involuntary, wilful or otherwise, upon what a Jury may deem a proper degree of diligence, and responsibility is at an end. There must be a fixed rule of liability, not to be disturbed or set aside by the courts, except upon established principles. And it will not do to allow the officer to take the law into his own hands, and peremptorily refuse, or what is the same, wholly neglect or fail to serve the process of the Court, to which he is bound, and which the creditor has a perfect right to insist upon; and then, when called on, to substitute himself in place of the debtor. Such a course would be at variance with sound policy. We cannot feel, that under such circumstances, it would be a hard rule to hold the creditor entitled to recover the whole amount of his debt.

If the Sheriff then, could not have protected himself from a rule, under these circumstances, neither can his securities resist a recovery against them on that account. The Statute subjects the Sheriff for official misconduct; no special damage need be averred or shown. Having neglected or refused to do what it was incumbent on him to do, the law will fix the damage to him

who had the right to have the duty performed.    And if the plaintiff's injury is the amount of his debt, to that extent, also, the securities are liable.

And we have precedent to sustain us in the position we occupy.

The Derby Bank of Connecticut brought an action against the Sheriff of Litchfield County, for the default of one of his deputies, in relation to the collection and return of an execution. The defendant sought to justify himself, upon the ground of an alleged agreement between the plaintiff and the debtor in execution, to suspend the collection of the money due upon the judgment, for the term of nine months; and the plea being allowed by the Court below, the plaintiff filed a bill of exceptions, and assigned this decision as error.    The Supreme Court held, that the plea, if proven, constituted no justification to the Sheriff; that it was no payment, satisfaction or discharge of the debt, and that the officer, being a stranger to the arrangement, and having no direction from the Bank to conform to it, he could not avail himself of it; that whether it was an honorary or legal compact, it was an affair between the parties themselves, and with which the Sheriff had no concern.    And that the question of the existence of the agreement could not be tried in the present issue.    2 *Conn. R.* 417.

This case shows that the Sheriff's liability is regulated exclusively by the line of *his* duty, and that he is limited by this in his defence, and that he will not be suffered to go beyond it, to hunt up excuses.

The argument assumes that the Sheriff was authorized to take cognizance of the outstanding liens against Levy; and that, although the fact of his insolvency was not demonstrated until the sale of his property took place, which was some time, perhaps several years, after the Sheriff's liability for neglect of duty had accrued, that, still the officer may screen himself under this subsequent or *ex post facto* evidence.    I shall be pardoned, I hope, for introducing to this point the remarks which fell from Chief Justice *Hosmer*, in delivering the opinion of the Court in *Watson vs. Watson*, (9 *Conn. R.* 141.)    It was an action of trespass against John B. Watson and Samuel Phelps, for taking and carrying away from the plaintiff a certain gray Arabian horse, of the value of $900.    The defendants justified, under a writ of *replevin*, issued by *John M. Niles*, esquire, a Justice of the Peace.    The plaintiff

replied and proved, that the horse in controversy was not distrained, impounded, attached, or in any other way in the custody of the law, so as to justify the writ of *replevin;* but was in the actual possession of the plaintiff, and that these facts were well known to both the defendants, at the time the writ of *replevin* was taken out and served. The presiding Judge decided, that under these circumstances, the writ of *replevin* was no justification to either of the defendants ; and an appeal was taken to the Supreme Court, to correct the alleged error in this judgment.

" The next inquiry," says the Judge, " regards the conduct of *Phelps*, the defendant. The writ was put into his hands, as an officer, to serve, and he accordingly served the same by replevying the before-mentioned horse. The first objection to this act of his, is founded on a fact proved at the trial of the cause, to wit: that he knew the said horse had not been distrained or impounded. From this the plaintiff infers that the officer ought not to have served the replevin, and that in thus doing he became a trespasser. I reply to this objection, that the defendant, Phelps, being a legal officer, it became his duty, *regardless of any knowledge of his own*, that there existed no cause of action, to serve the writ committed to him, promptly, unhesitatingly and without restraint from the above mentioned cause. This I consider so firmly established as to render the proposition self-evident. The facts on the face of the writ constitute his justification, because he was obliged to obey its mandate ; nor was it any part of his duty to determine whether the allegations contained in the replevin were true. The proof of these positions results, incontrovertibly, from his relative condition. He was an executive officer, whose sole duty it is to execute, and not to decide on the truth or sufficiency of the processes committed to him for service. He has no portion of judicial authority, nor the means of inquiry into the causes of action contained in the writs and declarations put into his hands for service. *Obedience to all precepts committed to him to be served, is the first, second and third part of his duty.* It is easy to see what wide-spread mischief might result from permitting an executive officer to decide, on his own knowledge, that he ought not to serve a precept or warrant put into his hands for service, and to consider what justly must follow from such doctrine ; that is, that his return of the fact would be a justification for his omission. In short, the executive officer must do his duty, *which is to*

*obey all legal writs, and must not arrogate to himself the right of disobeying the paramount commands of those to whose mandates, by law, he is subjected."*

I need not comment on this strong and appropriate language; and it is too plain and pointed to require application to the present case. It establishes, conclusively and most forcibly, the great truth, that whatever may be the knowledge of the officer, he can never set it up against the imperative command of the precept of the Court, nor return it as a justification for his disobedience to the mandate of the writ; and farther, that he is clothed with no judicial functions to try titles to property, or to adjudicate the respective liens of the conflicting claimants.

In *Earle vs. Camp & Stone*, (16 *Wend.* 562,) it was held, that in an action of trespass by an officer, it is not admissible for a defendant to show that the property, for which he is sued, was subject to a *mortgage* previous to the levy by the plaintiff, or that it belonged to a third person; nor can he show that the property taken from the custody of the officer by him, was *exempt* from execution or attachment. No one but the defendant in the process, under which the levy was made, can avail himself of such fact.

If a third person, when sued by the Sheriff, is not allowed to set up those outstanding liens and titles, why should the Sheriff be permitted to do it, when prosecuted by the plaintiff?

Suppose the Sheriff had returned *nulla bona* upon Stanford's execution, could he, under the facts now offered in evidence, have justified the return? We think not; for Levy had, at the time, property in his possession, ostensibly, perhaps enough to pay this debt; and had he made this return, and the plaintiff had sued him for a false return of the *fieri facias*, it is clear that the insolvency of the defendant in execution could not have justified the return. *Stevens and others vs. Beekes*, 3 *Black. R.* 88.

In *Hargraves vs. Penrod*, (*Breese's R. appendix, p.* 15,) the Supreme Court of Illinois ruled, that it is the duty of an officer to whom an execution is directed and delivered, to make reasonable exertions to levy it on the property of the defendant, and if he is guilty of negligence, he will be made liable; and the fact that the creditor did not point out to the officer the debtor's estate, on which to levy, is not sufficient to excuse the Sheriff; and that the right of action of the judgment creditor against a Sheriff for not

levying a *fi. fa.* is not taken away by his discharging the debtor from a *ca. sa.* issued at his instance, although such discharge might be a satisfaction of the judgment, the creditor's remedy against the Sheriff being perfect before such discharge.

If this be so, how can the subsequent sale of Levy's property, and its falling short of the amount in the Sheriff's hands, relieve Word, the Sheriff, from the liability already incurred by his neglect to levy the execution ?

In *Hall & Co. vs. Brooks*, (8 *Verm. R.* 485,) which was a case in all respects entirely similar to this, and where, as here, the only question was, whether the evidence offered as to the poverty of the debtor in execution was competent to mitigate the damages, the Supreme Court held, that the Sheriff having wholly failed and refused to levy or collect the execution, that no testimony could be received to show the situation of the debtor, or that he was irresponsible and unable to pay the *fi. fa.* or any part of it; that the officer, by his conduct, made the debt his own, and that the creditor was entitled to recover the full amount of his execution. In the note to *Williams vs. Mastyn*, (4 *M. & W.* 145, *American Edition*,) it is said, "For an escape on *execution*, the Sheriff is liable for the whole debt. In *debt*, it is certain that less than the whole original judgment cannot be recovered. In *case*, it has been said that the Jury may lessen the damages, according to the circumstances; but it would seem that the only circumstances which would authorize a reduction of damages, are such as extenuate the misconduct of the officer; for the mere fact of the prisoner's being destitute of property, will not authorize the Jury to give less than the amount of the judgment, for they are not to speculate on the probable chance which the plaintiff had of recovering his debt, if the escape had not taken place." Citing 4 *McCord*, 281, and 1 *Bailey*, 98.

The same distinction is taken in *Richardson vs. Spencer*, (6 *Ohio R.* 13,) namely : that the measure of damages will be regulated by the *wilful default* of the officer, and not the solvency or insolvency of the debtor. "The total inability of the debtor to pay," say the Court, "conduces directly to lessen the damages, and would be received to reduce them in all cases where the escape was not voluntary on the part of the officer; but the Sheriff has no right to judge of the propriety of imprisoning persons committed to his charge, or to permit persons to go at large, in

the expectation of reducing the damages to be recovered of him, by showing that no good could have resulted from confining the party in prison."

And as proof that this view of the liability of officers, is in accordance with public policy, it is worthy of notice, that many of the States of the Union, in the revision of their codes, have inserted an express provision, to the effect that if any Sheriff or other officer shall fail to levy and return an execution, as directed by law, that the plaintiff may not only recover judgment against him for the amount of his debt, but damages also for the default. For myself, I am not disposed to rail against the severity or injustice of such enactments.

We have been respectfully reminded, that the tendency of this, as well as all similar tribunals, is to become too technical—to incline too much to the *summum jus* principle, viz: the too rigorous exaction of extreme legal justice; and to overlook the maxim, *jus respicit æquitatem*, that the law should have respect to the equity of the case; and this is attributed to the fact, that by not having circuit duties to perform, we are removed too far from the world as it is; and to some extent, perhaps, this objection is well founded; but every medal has its reverse—every picture its lights and shadows—and there are doubtless advantages, as well as disadvantages, resulting from this organization. While it may be true that we are liable to become too stiff and rigid, from dwelling forever in the frigid zones, we are protected by reason of our propinquity to the polar ices, from those storms and tempests which fall often with such overwhelming violence upon those who dwell nearer the equator. To drop the metaphor, the excitement resulting necessarily from a *nisi prius* trial, is not always the most favorable to the calm discussion and sober consideration of truth. Appeals here are usually made, as they ought always to be in such a forum, to the reason and understanding, rather than to the passions; and our minds are seldom distracted, and our judgments disturbed, by that impassioned oratory which, however admissible in itself, and in its place, is, nevertheless, better adapted to the investigation of matters of fact than questions of law, and which may be addressed more appropriately to the Jury Box than the Bench, and the aim of which is frequently victory and success, rather than the ascertainment and establishment of truth.

[3.] The interrogatories taken in the Equity cause, and proposed to be read in the Common Law action, were properly, we think, ruled out; for while the parties to both proceedings were the same, it did not satisfactorily appear, that the subject matter was the same in both. And having excluded the testimony which was tendered to support the plea of the defendants, we deem it unnecessary to express any opinion on the rebutting proof which was offered by the plaintiff.

Believing, therefore, that the judgment of the Circuit Court is erroneous, we shall remand the cause and award a new trial, with the following instructions, to wit:

1. It is the opinion of this Court, and it so adjudges, that when an execution is placed in the hands of the Sheriff, commanding him to make the money due thereon, ample time being allowed for that purpose, and he fails to levy the same on the property of the defendant, and renders no sufficient excuse for his neglect of duty, that he becomes personally responsible for the debt to the plaintiff; and the fact that there may be other outstanding liens against the party or his property, of an older date, will not protect the officer from his said liability, although it should turn out, upon a subsequent sale of the property, that there was not enough to satisfy all the liens.

2. That a rule absolute against the Sheriff, ordering him to pay over to the plaintiff the amount due upon his *fi. fa.* is conclusive against the principal, but *prima facie* evidence only against the securities, in an action upon the bond; that said sureties will be entitled to make any defence which the Sheriff himself could have made to the original rule against him; yet, inasmuch as he could not defend himself, under the facts and circumstances stated in the foregoing direction, so neither can the securities resist a recovery on that showing, and that any evidence offered for that purpose is incompetent and inadmissible.