HENRY GRAVES, *et al.*, V. ELIZABETH F. BULKLEY.

1. AMERCEMENT, *Waiver of.* If a sheriff, after the return day of an execution, transmits to the clerk of the court issuing the execution all the moneys collected on the writ, less legal fees thereon, with a written statement that the writ has been lost or mislaid, and such statement is filed with the clerk, and thereafter the plaintiff in the execution accepts the proceeds of the writ, he thereby waives the neglect and absolves the sheriff from amercement for omitting to return the execution.

2. ORDER OF AMERCEMENT, *Not Conclusive as to Sureties.* Although the sureties of a sheriff may be made parties to a judgment of amercement under ? 478 of the code, by action to be commenced and prosecuted as in other cases, the order or judgment of amercement is not conclusive as to the sureties, who may, in such a proceeding, prove everything which would have protected the officer from liability.

*Error from Leavenworth District Court.*

ACTION by *Bulkley* against *Graves* and four others, as sureties upon a sheriff's bond. Judgment for the plaintiff, at the December Term, 1879, of the district court. The defendants bring the case here. The opinion states the facts.

*C. W. Johnson,* for plaintiffs in error:

There was no neglect, unless in notifying the plaintiff in the execution of the fact of the levy and sale, and of the loss of the execution. (7 Kas. 283; 33 N. J. L. 378; 34 id. 542; 39 Ga. 52.)

Accepting the proceeds of the sale estopped the plaintiff from the proceeding to amerce the sheriff for not returning the execution. (33 N. J. L. 378; 39 Ga. 521; 51 id. 161; 83 Ill. 194; 21 Pa. St. 266.)

*Lucien Baker,* and *William C. Hook,* for defendant in error:

The order or judgment of amercement is *res adjudicata* as to the sureties. The whole case is not thrown open for them to make the defenses which Young might have made. If it were, the proceeding contemplated by said § 478 would not amount to anything more than an action on an official bond.

This is a proceeding to make sureties parties to a judgment. The proof which warranted the judgment is closed. ( 3 Ohio St. 522.)

It is claimed that the defendant in error waived her rights against Young by the alleged receipt of some money returned by him with his statement long after the return day of the execution issued to him, and long after the time he ceased to be sheriff. Even if this were material, the evidence does not show that the defendant in error authorized the taking of this money by T. E. Bulkley, as her agent, or that she acquiesced in or knew of the act. But the objection is not tenable if the facts were as the plaintiffs in error contend. The *neglect* to return the execution on or before the return day thereof, *fixed* Young's liability. ( 17 Kas. 410.)

Acceptance by a judgment creditor of proceeds of the execution, does not release the sheriff from his liability to be amerced. (4 Humph. 309; 2 Swan, 442; 2 Heisk. 10; 2 Metc. [Ky.] 327.)

The opinion of the court was delivered by

HORTON, C. J.: The case disclosed in the record is as follows:

On October 26, 1878, Elizabeth F. Bulkley, plaintiff below, recovered a judgment against one Joel Hiatt, jr., for $1,239.69 and costs of suit, in the district court of Leavenworth county. On October 29, 1878, an execution was issued on the judgment against the property of Hiatt, directed to R. J. Young, then sheriff of Brown county, and received by him. Young never returned the execution, but on February 13, 1879, long after the return day, the clerk of the court received the following written statement from him:

*Amount of sale in the case of Bulkley v. Joel Hiatt, jr.*

| | |
|---|---|
| 49 fat hogs, at $3.50 each.............................................. | $171 50 |
| 80 acres of corn in the field......................................... | 73 00 |
| | $244 50 |
| Fees......................................................................... | 46 30 |
| Amount of draft inclosed................................................ | $198 20 |

MR. CLERK: I am sorry I have not made any return to you sooner, but I either lost or put the papers away, so I cannot find them; so all I can do is to send you the full amount, less the fees in the case. I have written to Hiawatha to try and find the papers, but am afraid they got lost in moving to Minneapolis. I hope this will be satisfactory. Mr. Broaddus is a friend of the Bulkleys, and saw the hogs and corn sold, and can testify that my act is correct.

Yours respectfully,    R. J. YOUNG.

MINNEAPOLIS, Feb. 11, 1879.

*Sheriff's fees in the case of Bulkley v. Joel Hiatt, jr., from District Court, Leavenworth county, Kansas.*

| | |
|---|---:|
| 20 miles, at 10 cents per mile............................................ | $2 00 |
| Making levy on property................................................ | 50 |
| Advertising in *Kansas Herald*....................................... | 50 |
| 18 miles, at 10 cents...................................................... | 1 80 |
| Posting two bills in my township..................................... | 75 |
| 20 miles, at 10 cents per mile, to sell property.................. | 2 00 |
| Selling 49 hogs and 80 acres corn.................................... | 50 |
| | |
| Total.......................................................................... | $8 05 |
| Printer's fees.............................................................. | 7 25 |
| Appraisers' fees........................................................... | 2 00 |
| District clerk's fees making entry................................... | 1 00 |
| Feeding, watering 49 head of hogs, and having charge of same 4 weeks................................................................ | 28 00 |
| | |
| Total fees................................................................. | $46 30 |

On the day this was received and filed, T. E. Bulkley, as the agent of Elizabeth F., accepted the amount returned with the statement, less the fees, and signed the following receipt:

FEB 13, 1879.—Received of McCown Hunt, clerk, $165.10, in full of amount realized by sheriff of Brown county, Kansas, on execution, less the costs herein, which costs amount to $33.10.        ELIZABETH F. BULKLEY,

*By T. E. Bulkley, Agent.*

On August 14, 1879, Mrs. Bulkley filed her motion in the district court of Leavenworth county to amerce Young for neglecting to return the execution of the date of October 29, 1878, on or before the return day thereof. Notice of the motion was served personally on him, on August 16, 1879, notifying him, among other things, that the motion would come on for hearing on September 6, 1879, at ten o'clock A. M. of that day. On September 6, 1879, Young failed to appear.

The motion, however, was called up and disposed of, and on the hearing, Young was amerced in the sum of $1,257 and costs. On September 9, 1879, an execution was issued on the order of amercement against the property of Young, and in due time returned wholly unsatisfied for want of property.

On October 4, 1879, this action was commenced, to make the sureties on Young's official bond, who lived in Brown county, parties to the judgment or order of amercement, under the provisions of § 478 of the code. The condition of the bond was: "That if the said R. J. Young shall well and faithfully perform and execute the duties of his office of sheriff of said county during his continuance in office by virtue of his election, without fraud, deceit or oppression, and shall pay over according to law all money that may come to his hands as such sheriff, and shall deliver to his successor all writs, books, papers and other things pertaining to his office which may be so required by law, then the obligation shall be void; otherwise, to be and remain in full force and effect." On January 12, 1880, the sureties filed their separate answers, alleging various matters in defense, and among others, "that, without fault or neglect of Young, the execution was lost, and thereafter, on seeking to make a return upon the execution, Young could not, by the most diligent inquiry, find the writ; that, on February 13, 1879, he gave notice to Mrs. Bulkley and her attorney of the loss, and then transmitted to the clerk of the district court of Leavenworth county a statement of such loss and the proceeds of collections under the writ, which proceeds were applied upon the judgment and costs; that the proceedings to amerce took no notice of such partial satisfaction of the judgment; nor did Young receive credit therefor, but was amerced for the full amount of the judgment and costs, and interest thereon, and ten per cent. penalty thereunto added."

Upon the hearing the sureties gave in evidence the written statement of Young of February 11, 1879, on file with the clerk, and the acceptance by Mrs. Bulkley of the money, less the costs, transmitted with the statement. Notwithstanding

this proof, the court made the sureties parties to the order and judgment against Young, and adjudged that the plaintiff recover of them the sum of $1,257 and costs.

Many exceptions are taken to the proceedings of amercement and judgment by the plaintiffs in error, only one of which need be considered, as that one is decisive of the case. We refer to the acceptance of the $165.10 by the defendant in error, on February 13, 1878, after the written statement of Young had been filed with the clerk. While one of the objects of the statute relating to amercement is to insure promptness and fidelity on the part of sheriffs and other officers, another object of the statute is to furnish the plaintiff in an execution an opportunity to collect in a speedy manner his debt, damages and costs from the defaulting officer. Yet, as the remedy provided for is summary and highly penal, any one who would avail himself of the remedy must be both within the letter and spirit of the law. The sheriff, in this case, neglected to make return of the execution, but after the return day transmitted the fruits of the execution, less his costs, to the clerk. His only default consisted in the non-return of the execution. The only actual damage arising to the plaintiff was the delay in the transmission of the collection. If the plaintiff desired so to do, she might have refused the money and resorted to her amercement proceeding, thereby recovering the whole judgment debt, costs and ten per cent. added. On the other hand, if, with knowledge of the default, she accepted the fruits of the execution, it amounted to a ratification of whatever had been done or omitted to be done in the way of the non-return of the execution by the sheriff, so far at least as to preclude her from alleging such non-return as a ground of amercement. Take strong illustrations: suppose all the judgment debt, interest and costs had been transmitted to the clerk instead of the $198.20, and the plaintiff below, with notice that the execution had not been returned before the return day thereof, had accepted payment in full of her judgment—would it be seriously contended that her action was no waiver or condonation of the neglect of the

officer, and notwithstanding the satisfaction of her judgment she would be entitled to pursue her remedy of amercement to the second recovery of the judgment and costs?

Again, if the sheriff had collected and transmitted the whole amount of the execution, but had returned the execution a short time after the return day, and with notice of the facts the plaintiff had accepted the money and satisfied the judgment, would she be allowed to maintain amercement for such neglect in the return of the execution?

We think these inquiries on reason and authority must be answered in the negative. Yet in those cases, the neglect or default would exist for which the letter of the statute seems to authorize amercement, but when construed in regard to the whole purpose of its enactment, it will not bear such an unreasonable interpretation. On like principle, the spirit, if not the letter of the *statute, will not warrant amercement where the proceeds of the execution are returned, less costs, and no other default exists except the non-return of the execution, when the plaintiff, with notice of the neglect, accepts the moneys paid over by the sheriff. This rule does not prevent the issuance of an *alias* execution; nor does it estop a plaintiff from pursuing the remedy of amercement, if the sheriff has induced the acceptance of the collection by fraud.

In *Trigg v. McDonald*, 2 Humph. 386, it was held that where a plaintiff in the execution received money collected on the writ, he thereby waived his right of action against the sheriff for a false return on the writ for the balance. So the acceptance by the plaintiff of the money collected on the execution ratified the action of the sheriff—so far, at least, as to absolve him from amercement for the neglect in the non-return of the execution. (Watson on Sheriffs, 204; 5 Law Lib. 147.) Nor is the doctrine here stated in conflict with *Bond v. Weber*, 17 Kas. 410, for in that case, the plaintiff committed no affirmative action to waive the neglect, or condone the omission.

In answer to the acceptance, counsel for defendant in error say that even if this were material, the evidence fails to show

that Mrs. Bulkley authorized the taking of the proceeds of the execution. The clerk of the court testified otherwise. He said: "The entries in the appearance docket of this court show that on February 13th, 1879, there was received at this office from R. J. Young, sheriff of Brown county, $198.20; that it was applied on the judgment of plaintiff and receipted for by plaintiff." It is true, this testimony is followed with the receipt of Elizabeth F. Bulkley, by T. E. Bulkley, agent, but the clerk paid the money to him for Mrs. Bulkley, and she has not disowned the act. The trial court and all the parties seem to have treated the payment by the clerk as payment to Mrs. B., and it is hardly fair to question the agency of T. E. Bulkley for the first time in this court.

Counsel for defendant in error further contend that the order or judgment of amercement is *res adjudicata* as to the sureties, and that the latter are not permitted to set up as a defense any matter that occurred previous to the entering of the judgment. This part of the case has given us serious trouble. There is great conflict of authority, and the Ohio cases and several others fully sustain the view of counsel. In this connection we may remark, however, that the case of *Webb v. Anspach*, 3 Ohio St. 522, to which we are referred as decisive upon this point, went off upon the strained construction of the Ohio statute, that filing a motion in the clerk's office in vacation and calling it up in court is not the making of a motion in open court.

To our mind the better opinion, however, is, that except in cases where, upon the fair construction of the contract, the surety may be held to have undertaken to be responsible for the result of a suit, (*Kennedy v. Brown*, 21 Kas. 171,) or when he is made privy to the suit by notice, and the opportunity is given him to defend it, a judgment against the principal is not conclusive against the surety. This is especially true in the case of official bonds, where the sureties undertake in general terms, as in the bond set forth in the petition, that the principal will perform his official duties, pay over the moneys that may come to his hands, and deliver to his suc-

cessor the writs, books and papers of his office. They do not agree to be absolutely bound by any order or judgment against them for official misconduct or neglect, nor to pay every such judgment. It is a general principle that no party can be held for a breach of his own obligation without an opportunity to be heard in defense; and in this state it is the policy of the law to allow separate answers, as well as separate defenses. We think there is nothing in the bond executed by the sureties or in the provisions of said § 478 that debars the plaintiffs in error of the right to contest with the defendant in error the question of their liability. Counsel seem to concede that if this were an action on the official bond of the sheriff the sureties might make the defenses which Young could have made, but assert that as this is only a proceeding to make the sureties parties to a judgment, nothing previous to the entering of the judgment can be considered. This construction overlooks some of the provisions of § 478. The proceeding is there denominated an action, to be commenced and prosecuted as other cases. Therefore if we assume the proceeding was properly begun in Leavenworth county against the sureties, we must hold that such proceeding, although a continuation of former proceedings, is, in reality, in the nature of an action as to the sureties sought to be charged, and that such judgment previously rendered against the principal at most is only *prima facie* evidence against the sureties to the bond.

While in an ordinary action upon the official bond, a plaintiff would recover only the damages actually sustained, by seeking his remedy by amercement and then under this statute, he may recover, if he recovers at all, the full amount of his debt, with the additional penalty, but we do not think it was intended for the statute to cut off the usual defenses of sureties. In *Crawford v. Word,* 7 Ga. 445, it was held that a rule absolute against the sheriff, ordering him to pay over money, is neither an extinguishment of his official security, nor a bar to a suit against his sureties; and that in a suit on the bond, the order is conclusive against the officer, but pre-

sumptive evidence only against the sureties; and they were allowed to prove everything *ab origine* which would have protected the officer from liability. In *Shelby v. Governor*, 2 Blackf. 289, an action of debt was brought on a sheriff's bond by the governor, for the use of an execution creditor against the administrator of the sheriff's surety. The *gravamen* was, the sheriff's failure to return the execution. The declaration averred, *inter alia*, that the execution creditor had previously obtained a judgment against the sheriff for the same neglect of duty then complained of. At the trial the plaintiff offered in evidence the previous judgment against the sheriff. The circuit court refused to admit the evidence, and the decision was on a writ of error approved of. In *Lucas v. Governor*, 6 Ala. 826, it was declared that a recovery in an action against a sheriff for a false return was no evidence to fix the liability of his sureties, when they were sued upon his official bond. In *Whitehead v. Woolfolk*, 3 La. Ann. 43, which was a bond for the faithful discharge of Conner's duty as receiver, it was held that a judgment ascertaining a balance against him as receiver was not conclusive against the sureties. In *Atkins v. Baily*, 9 Yerg. 111, a judgment by confession of a constable or upon testimony of witnesses was deemed evidence against the sureties of such officer, but not conclusive; and the sureties were adjudged the right to prove or establish such facts as showed that the principal was not liable. See also *Taylor v. Johnson*, 17 Ga. 521; *State v. Martin*, 20 Ark. 629; *Gillinan v. Strong*, 64 Pa. St. 242; *De Greiff v. Wilson*, 30 N. J. Eq. 435; *Pico v. Webster*, 14 Cal. 202; Brandt on Suretyship, §§ 1, 524, 525, 530.

The judgment and order of the district court will be reversed, and the case remanded.

All the Justices concurring.