## McWHORTER *v.* CHATTOOGA COUNTY; *et vice versa.*

1. The execution to which the affidavit of illegality was filed was issued in conformity with the statute in such cases made and provided. The defendant can raise all questions proper for his defense by an affidavit of illegality, as he has done; and in no respect, in the affidavit pointed out, has due process of law been denied him.

2. The defendant in execution, McWhorter, as one of the sureties became surety upon the bond in January, 1921. Glenn, the principal in the bond, was tax-collector in the year 1920, and became successor to himself in 1921, giving a new bond, upon which McWhorter and others were sureties; and McWhorter raises the contention that he is not liable for the money collected by his principal in the year 1920 which he failed to account for. *Held*, that this contention is not sound, and the court erred in overruling the demurrer to this ground of illegality. *Fidelity & Deposit Co.* v. *State*, 148 *Ga.* 545 (97 S. E. 536). The ruling just stated disposes of the third ground of the illegality.

3. In the 7th and 8th divisions of the illegality it is alleged, in substance, that Glenn, the tax-collector and principal in the bond upon which affiant was surety, collected the taxes in said county during the months of September, October, November, and December of the year 1920, and entrusted the same, that is, the principal sum for which said execution is proceeding, to a certain bank and to a named person as cashier of that bank, to the credit of the said Glenn, and that the bank misapplied and misappropriated all of this sum of tax money and unlawfully applied it to its own uses and to the payment of debts due to it by Glenn as an individual and to the payment of the private debts of Glenn; that these unlawful acts of the bank in reference to the money took place in the months and year last above stated, and before deponent became liable upon his bond for the official acts of Glenn with reference to the money; that all the facts relatively to the placing and entrusting of the money to the bank were known to the plaintiff in execution through the knowledge of its agents authorized by law to act for it,— that is, the board of commissioners of roads and revenues. *Held*, in view of the ruling made in headnote 2, that this contention of the defendant is without merit.

4. The ground of the illegality based upon the contention that the tax levy was illegal because the same was not published as required by law, in that the board of commissioners did not publish in the county a copy of the tax levy but in lieu thereof published what purported to be a copy of the tax levy, is without merit, though there are variances between the tax levy and the copy published. If the tax levy had not been published at all in the paper, this would not have rendered it illegal and void as a levy. *Garrison* v. *Perkins*, 137 *Ga.* 744 (74 S. E. 541).

5. The court properly sustained the demurrer to that part of the affidavit of illegality setting up that the affiant was released from liability by a dismissal on the part of the plaintiff's agents of the levy on a part of the property belonging to another one of the sureties. The dismissal of a levy on a part of the property of a cosurety was for a sufficient

19

and legal reason, and it is explained in writing entered on the fi. fa. or attached thereto.

6. The court did not err in sustaining the demurrer to the 10th paragraph of the affidavit of illegality, which alleged, as a defense against the execution, that the official bond of the tax-collector on which the execution issued was executed and approved on January 1, 1921, and that at that time N. K. Bitting, a cosurety, owned valuable lands in Floyd County, and the plaintiff in execution failed and refused to cause said bond to be recorded in that county.

7. The court overruled the demurrer to the 5th and 6th paragraphs of the illegality, which assign as grounds for resisting the enforcement of the execution the fact that the execution is proceeding for interest on the principal sum thereof from the date of the execution at the rate of 20 per cent. per annum, and for attorney's fees. It is not complained that the attorney's fee is unreasonable in amount. The demurrer to this part of the illegality was good, and should have been sustained. The court erred, therefore, in overruling it.

8. The portion of the affidavit of illegality setting up the illegality of the levy under which the money was raised which is now sought to be recovered was open to demurrer, and the demurrer thereto was properly sustained.

Nos. 2909, 2932. September 28, 1922.

Affidavit of illegality of execution. Before Judge Wright. Chattooga superior court. October 3, 1921.

*B. E. Neal, C. D. Rivers, Rosser & Shaw,* and *Denny & Wright,* for plaintiff in error in main bill of exceptions.

*Wesley Shropshire* and *Little, Powell, Smith & Goldstein,* contra.

Beck, P. J. The board of commissioners of roads and revenues of Chattooga County issued an execution against A. H. Glenn as principal, and R. A. McWhorter and others as sureties upon the bond given by him as tax-collector, for county taxes collected for the year 1920. McWhorter interposed his affidavit of illegality, contending therein, upon the grounds stated, that the execution was proceeding illegally against him. A demurrer was filed to this illegality and to each and every ground thereof. The court sustained the demurrer to certain paragraphs of the illegality, and overruled it as to others. McWhorter filed a bill of exceptions assigning error upon the judgment sustaining the demurrer to specified paragraphs of the illegality. Upon so much of the judgment as overruled the demurrer to other paragraphs of the illegality the county assigned error in a cross-bill of exceptions duly sued out; and the case is here for decision both upon the main bill and the cross-bill.

1-6. The rulings made in headnotes 1 to 6, inclusive, require no elaboration.

7. Paragraphs 5 and 6 of the illegality raise the contention that the execution could not legally be issued and proceed to collect interest on the principal sum at the rate of 20 per cent. per annum from date, and for attorney's fees. The ruling made in headnote 7 follows from our construction of certain provisions of our statute law embodied in the Civil Code. Section 1187 of the Code of 1910 declares: "If any collector shall fail to settle his accounts with the comptroller-general in terms of the law, he shall issue execution against him and his sureties for the principal amount, with interest at the rate of twenty per cent. per annum on said amount: Provided, that if upon a final settlement it should appear that said collector was entitled to credits at the time he is required by law to settle, the comptroller-general may allow the same, and charge such interest only on the amount for which the collector is in default, together with all the costs and attorney's fees incurred by reason of the issuance of said execution." If this were an execution issued by the comptroller-general for taxes due the State by the tax-collector under the same circumstances, there could be no question that section 1187 would apply; and we think it is applicable in the present case, where a fi. fa. is issued by the commissioners of roads and revenues against the tax-collector for moneys claimed to be due the county. In section 521 of the Civil Code it is provided: "Any other remedy or right allowed by law for the enforcement of the collection and payment of the State taxes, either by the comptroller-general or tax-collector, may be used for the county taxes by the ordinaries." And the language of section 523 is as follows: "On failure to pay the same, such ordinaries shall issue executions against such persons and their securities, if any, for the full amount appearing to be due, as the comptroller-general issues executions against defaulting tax-collectors." And section 519 reads: "The tax-collectors shall be allowed the same commissions and fees for such collections as they are allowed by law for the collection of the State tax, and are liable to the same fines and forfeitures for any default or improper conduct." Construing these three sections together, and in connection with the provisions of section 1187, the execution issued in this case was not open to attack on the grounds set forth in paragraphs 5 and 6 of the affidavit of illegality.

8. A further attack is made upon the legality of the execution,

upon the ground that the tax levy was illegal, null and void, for the reason that the board of commissioners of roads and revenues exceeded their authority in levying taxes shown by a specified exhibit attached to the affidavit of illegality, .in that the board levied a tax of four mills for the maintenance of the chain-gang, for the salaries of the warden and guards, and for the usual expenses of operating the chain-gang, and made a further levy of two mills for a district road fund, when under the law, as affiant contended, the county was limited to a tax of two and one-fourth mills for all chain-gang and road purposes; that the county is operating under and by virtue of the road laws contained in sections 705 to 711 of the Code of 1910, which had been duly placed in effect in the county by an election called for that purpose; that the purported levy is claimed to have been made by the board of commissioners under and by virtue of the road law embodied in sections 694 to 704 of the Code of 1910; and that the board of commissioners claim that they are operating under the alternative road law last referred to, by virtue of the provisions of an act of the General Assembly of this State approved August 19, 1918 (Georgia Laws 1918, p. 214), but that said act is unconstitutional and invalid, because violative of certain specified provisions of the constitution. We will not undertake to decide whether the act of the General Assembly last referred to and claimed to be unconstitutional is violative of the specified provisions of the constitution, because, under the view we take of the law regarding the responsibilities and duties of the tax-collector of a county, even though the law under which the county authorities were undertaking to levy and collect the tax in question was unconstitutional and the levy therefore illegal, and though the levy was for an amount that they were not authorized to collect, yet nevertheless, where the taxpayers of the county had paid this money under the levy to the tax-collector, he and the sureties upon the bond were liable therefor, and the commissioners of roads and revenues had the right to proceed to collect the same by the issuance of a fi. fa., as they have done in this case. If the county authorities were seeking to collect from the tax collector and the sureties on his bond for a failure to perform his duty in collecting a tax which might have been collected under a levy based upon an unconstitutional act, it might be that the collector and his sureties

could urge that the act was void and the levy therefore void, though we do not so hold, as that question is not raised here; but we do hold that where a tax-collector has actually collected money under a levy based upon a law that is unconstitutional, he can not urge the illegality of the tax levy as a ground for his failure to pay over money actually collected. Counsel for plaintiff in error strongly combat this view, but we think it to be fundamentally sound. Counsel rely upon the early case of *Reynolds* v. *Lofton,* 18 *Ga.* 47, as supporting the view urged by them. In that case it was held: " The justices of the inferior courts of the several counties have no power, under the act of 1821, to levy, for county purpose, ' a tax extraordinary of the general State tax,' until after such a tax has been recommended by two thirds of the grand jury of their counties, respectively; and if, before such recommendation, any bond be taken by such justices from the tax-collector for the due collection of the tax, the bond is void, as are also any legal proceedings founded on the bond." The tax with which it was sought to charge the tax-collector in that case was " a tax extraordinary of the general State tax," which the justices of the inferior courts had no power to levy until after the tax had been recommended by the grand jury of the county; and the court concluded that " a bond taken before such recommendation from the tax-collector, for the due collection of the tax," is void and unenforceable. It can not be contended that the bond given by the tax-collector, and in the present case sought to be enforced, is void. The scheme of taxation at the time the decision in 18 *Ga.* was rendered was different from what it is now. At present we have a general scheme and it is embodied in the statutes contained in the Code of 1910; and in that part of the statutes relating to taxation and the State and county's agents for the collection of this tax, provision is made for the giving of a bond by the tax-collector, and it is not conditioned to pay over " money lawfully collected," nor moneys raised from an extraordinary tax; but the condition of the bond is in the broadest language, " for the faithful performance of his duties as collector of the county tax." Now, even if the tax in question was actually collected in the enforcement of an unconstitutional statute, and the money came into the hands of the tax-collector, what was his duty in regard to it? No one would hesitate for a moment to answer that question: — It was

his duty to pay it over to the county or its officer duly authorized to receive it; and for any failure to comply with this duty the tax-collector would be guilty of a breach of his bond. In the case of *Wilkinson* v. *Bennett,* 56 *Ga.* 290, the tax-collector had collected money under orders of the ordinary levying county taxes, and failed to pay over the same or a part thereof. In a proceeding against the tax-collector the invalidity of the levy was urged as a defense against the proceedings. This was the defense set up by the tax-collector and not by the sureties; no sureties were involved in that case. In the decision rendered it was said, Judge Bleckley speaking for the court: "This proceeding is against the collector only. No sureties are involved. The collector used the orders to collect the money; he now seeks to attack them to retain it. He armed himself as a public agent with what was supposed to be good authority. The authority was not resisted by the tax-payer. They did not complain that the taxes were illegally assessed, but paid over the money for the public use. After this has been done, can the collector be heard to say that he must keep the money, because, perchance, the taxpayers may reclaim it? They have not reclaimed it, and possibly may never do so. If they should, and the collector should be forced to refund it, the proper legislation can doubtless be had for his relief. It is not to be presumed that the State will leave a faithful but unfortunate public officer to suffer by restoring the money illegally taken from the citizen, and paid over to the county for public use. On the score of strict law, however, we think the collector can not protect himself by alleging a title to this money outstanding in the taxpayers from whom it was received. The collector is an agent, and, as such, received the money. The public is his principal, for whom it was received. The Code declares, in section 2188, that 'an agent can not dispute his principal's title, except in such cases where legal proceedings, at the instance of others, have been commenced against him.'" In the case of *Walden* v. *County of Lee,* 60 *Ga.* 297, it was held that the collector can not attack the validity of the orders under which he has collected the county tax as a reason for not paying the money over, even if they were illegal. These rulings made by our own court could be supported, if necessary, by numerous citations from decisions of courts of other States and the works of text-writers; but we deem it unnecessary. The case of *Barlow* v.

*Ordinary of Sumter County,* 47 *Ga.* 639, has some language seemingly in conflict with what we are holding; but only two Judges presided in that case, and we decline to follow it if it lays down a rule different from that which we have declared here to be sound.　The case of *Renfroe* v. *Colquitt,* 74 *Ga.* 618, was an action brought on the bond of the treasurer of this State to recover of him and his sureties certain sums of money which it was alleged had been received by him and paid to him and others for the use of certain moneys of the State deposited by him in certain banks.　A judgment in favor of the Governor for the use of the State was reversed in that case, it being ruled that the money received and which plaintiff sought to recover did not come into the hands of the treasurer by virtue of his office.　We do not think anything ruled in that case is in conflict with what we have ruled above.　But it is also a two-judge case, Chief Justice Jackson dissenting.　The case of *Mason* v. *Commissioners,* 104 *Ga.* 35 (30 S. E. 513), was an action upon a treasurer's bond. The facts of the case differ from those involved in this case; but if any of the rulings there made are applicable to the issues in the instant case and contrary to what we have here ruled, we decline to follow them, not being bound to follow that case as a precedent, as it was not rendered by a full bench.　In the case of *Wilkinson* v. *Bennett,* 56 *Ga.* 290, the question of the liability of sureties was not involved.　But if the tax-collector himself could not set up this defense, the sureties could not, because the tax-collector could only be held liable in an action on his bond on the ground that he had failed to comply with the condition of his bond; and if he breached the bond, the sureties were liable. The case of *Watts* v. *Colquitt,* 66 *Ga.* 492, was a case in which suit was brought on a sheriff's bond against the sheriff and his sureties.　The breach set out in the declaration was the failure of the sheriff to pay over certain moneys collected by him on a fi. fa. in his hands.　It was held that under the facts the sheriff was clearly liable therefor; but the sureties defended on the ground that the execution by virtue of which the money was collected was void, and that they were not bound by the rule absolute against the sheriff.　This court, on appeal by the sheriff's administrator, said: " The question here is, what effect has this rule absolute on the sheriff and on his sureties?　That

the sheriff is concluded by it on a suit on the bond is clear. It was so held in the leading case in our reports — 7 *Ga.* 445; and there, too, it was held that the sureties could 'set up any defense which the sheriff himself could in answer to the original rule which was taken against him.' So it would seem from this case that the sureties could only set up such a defense as the sheriff could have done in answer to the rule. Could the sheriff, with the money in his pocket collected under it, have set up the invalidity of the process by which it was brought into court? Certainly not. The tax-collector was not allowed to do this in the case in 56 *Ga.* 290; and to rule that the sheriff could, would seem to outrage all reason and principle as well as the clear public policy to allow no agent of the public to dispute the legality of the means by which he collects money for the public, or for any citizen virtute officii. In the case of *Taylor* et al. vs. *Johnson,* governor, for the use, etc., 17 *Ga.* 521, Judge Lumpkin evidently thought sureties as well as sheriff were concluded as to the breach of the bond by the rule absolute; for he says: 'Is not his disobedience to the rule absolute such " official misconduct " as constitutes a breach of the bond? And is not the judgment against him conclusive against the sureties and everybody else of that fact?' But in this case it is not necessary to go so far. It is enough to say that the sureties can set up now what the sheriff could have set up in answer to the rule, in defense; and as the sheriff could not have disputed the validity of the execution on the rule against him, the sureties can not now do so. This accords fully with the rule in the 7th *Ga.,* supra [*Crawford* v. *Word,* 7 *Ga.* 445], and concludes the point made by the sureties here."

It follows from what we have said that the judgment of the court below is affirmed on the main bill of exceptions; and under the rulings made in headnotes 2 and 7, the judgment is reversed on the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions, and reversed on the cross-bill. All the Justices concur.*